**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 12-47 |
| RAYMOND HAYWOOD, | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**JONES, II  J.**                                                           **February 18, 2022**

## I.      INTRODUCTION

Since the first cases of an unknown respiratory illness were reported in December 2019,[1] a

localized outbreak of coronavirus disease 2019 (hereinafter "COVID-19") has quickly evolved

into a global pandemic,[2] causing a public health emergency of international concern.  As of date,

the World Health Organization (hereinafter "WHO") has reported over 404.9 million confirmed

cases of COVID-19 total across the six continents, including more than 5.7 million deaths, and

there have been over 10 billion doses of the COVID-19 vaccine administered.[3]

In view of the foregoing, Defendant Raymond Haywood (hereinafter "Defendant") moves

for compassionate release from prison for "extraordinary and compelling reasons" under the First

Step Act.[4]  Pending before the Court is Defendant's *Pro Se* Motion for Compassionate Release

---

[1] The World Health Organization ("WHO") traces the origin of COVID-19 to a local outbreak in the City of Wuhan, Hubei Province, in Central China.  *See* World Health Organization, *Timeline of WHO's response to COVID-19*, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last updated June 30, 2020) [hereinafter *WHO's COVID-19 Timeline*] (reporting that the first cluster of COVID-19 cases emerged in December 2019); *see also* discussion *infra* Section II.B.

[2] On March 11, 2020, the WHO characterized the spread of COVID as a pandemic.  *See* World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020* (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020; *see also WHO's COVID-19 Timeline*, *supra* note 1.

[3] World Health Organization, *Coronavirus (COVID-19) Dashboard*, https://covid19.who.int/ (last updated Feb. 14, 2022).

[4] 18 U.S.C. § 3582(c)(1)(A).

(ECF No. 63) (hereinafter "Motion").  For the reasons set forth below, Defendant's Motion is denied with leave to re-file.

## II.     BACKGROUND

### A.  Defendant's Sentencing History

Defendant had been employed as a sous chef in a food court at the University of Pennsylvania until he was terminated.  Shortly thereafter, on November 15, 2011, he robbed the facility by holding one of his ex-coworkers at gunpoint and threatening her.  He stole approximately $3,300.  On February 2, 2012, Defendant was indicted for robbery interfering with interstate commerce, in violation of 18 U.S.C. § 1951(a), and using and carrying a gun during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  *See* Indictment, ECF No. 2.  In response, Defendant entered into a plea agreement with the Government, and on January 15, 2013, the Court imposed the agreed upon sentence of 180 months, consisting of 96 months on the Hobbs Act robbery charge and a consecutive term of 84 months on the 924(c) count.  This sentence fell far below the advisory guideline range of 262 to 327 months, given Defendant's status as a career offender.[5]  Since his sentence, Defendant has filed a *pro se* 18 U.S.C. § 2255 habeas petition (ECF No. 34), which this Court denied on March 6, 2014 (ECF No. 39).  Defendant also filed a second § 2255 habeas petition on August 27, 2019 (ECF No. 58), which, upon agreement of counsel, has been stayed pending further decisions by the Supreme Court.

To date, Defendant continues to serve his sentence at McKean FCI and is due to be

---

[5] Specifically, Defendant committed numerous theft offenses, beginning as early as age twelve (12).  As an adult, he incurred several convictions.  In December of 1992, at age 19, Defendant committed a gunpoint robbery for which he was sentenced to 11.5-23 months.  In May 1993, he committed an aggravated assault where he stabbed a man and shot him with a sawed-off shotgun.  For this, he was sentenced to 5-10 years in prison.  Defendant ended up serving the maximum sentence due to parole violations.  Upon his release in 2004, Defendant committed another assault where he hit and choked his girlfriend and attempted to stab her.  He was sentenced to 9-23 months.

released from the custody of the Federal Bureau of Prisons (hereinafter "BOP") on December 19, 2024.[6]  During his time in incarceration, he has committed four (4) disciplinary infractions, including: possessing a hazardous tool (a sharpened metal object) on March 3, 2013; fighting with another person on September 29, 2016; and refusing to obey an order on both July 11, 2019 and October 17, 2019.

### B. Defendant's Medical History

Defendant is currently 48 years old and obese.  *See* Def's Medical Records (hereinafter "Ex. A"), ECF No. 65, at 3.[7]  He suffers from anxiety disorder, but he receives medication for this and is otherwise able to participate in all normal activities of daily living.  Ex. A at 3-4.  On June 25, 2021, a BOP doctor discovered that Defendant had a heart murmur.  Ex. A at 9-11. Though the doctor believed it to be entirely asymptomatic, he scheduled an echocardiogram.  Ex. A at 11.  On October 25, 2021, the doctor wrote that this echocardiogram confirmed that Defendant's heart murmur was asymptomatic, and the treatment plan would be blood pressure management with a goal of weight loss.  Ex. A at 2.

Despite his conditions, on October 29, 2020, Defendant tested positive for COVID-19. Ex. A at 58.  He soon recovered and was released from quarantine with no documented complications.  Ex. A at 58.  Defendant has since received both doses of the Moderna vaccine, on February 5, 2021 and March 3, 2021 respectively, and he received the Moderna booster on October 26, 2021.  Ex. A at 64.

## III.   PROCEDURAL HISTORY

On September 15, 2021, Defendant filed the instant Motion (ECF No. 63), requesting compassionate release for health concerns due to the COVID-19 pandemic, familial circumstances

---

[6] *See* Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 14, 2022).
[7] The Court will refer to the ECF numerical pagination for record citation purposes.

because his wife suffers from cancer and is raising his children, and the alleged disparity between the length of the sentence he received versus what sentence would be given today.   The Government submitted a Response in Opposition to Defendant's Motion (hereinafter "Response") on November 15, 2021 (ECF No. 64), arguing that relief is not warranted because Defendant's sentencing argument is more appropriate for a habeas petition, and his health concerns are meritless due to his vaccinations.   On December 23, 2020, Defendant submitted a Reply in further support of his Motion (hereinafter "Reply") (ECF No. 68), restating similar grounds for relief as addressed in his initial Motion.   With these filings, his Motion is ripe for the Court's review.

## IV.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances."   *See Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted); *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)) (declaring that a court may not modify a term of imprisonment except in enumerated cases).   One limited exception is 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release."

On December 21, 2018, the First Step Act ("FSA") amended 18 U.S.C. § 3582(c)(1)(A) to add a provision that allows a defendant to move to a district court for a reduction in sentence, *i.e.* petition the court for compassionate release,[8] after exhausting the BOP's administrative process. Under 18 U.S.C. § 3582(c)(1)(A)(i), a sentencing court may reduce an inmate's term of

---

[8] 18 U.S.C. § 3582(c)(1)(A) "defines the mandatory conditions precedent to a defendant filing a motion for compassionate release."   The Court notes that the Sentencing Guidelines have not been updated to reflect the First Step Act, which provides that incarcerated defendants may file motions for compassionate release for disposition by the court. Pub. L. 115-391, §§ 603(b)(1), 132 Stat. 5194, 5239.   Previously, such motions could be filed only by the Director of the BOP.   U.S.S.G. § 1B1.13.

imprisonment only if the following four conditions are met: (1) "the inmate must satisfy an administrative exhaustion requirement;" (2) "the Court must find that 'extraordinary and compelling reasons warrant such a reduction;'" (3) "any reduction granted by the Court must be 'consistent with any applicable policy statements issued by the Sentencing Commission;'" and (4) "the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. §3553(a)." *United States v. Brown*, 13-CR-176-05, 2020 WL 2615616, at * 1 (E.D. Pa. May 22, 2020).

## V.   DISCUSSION

In his Motion, Defendant broadly describes the dangers of COVID-19 and how his age of 48 and health concerns of anxiety and heart disease places him at higher risk for complications arising from potential infection.   Defendant states that these, coupled with the alleged disproportionate length of his sentence and that his wife, who suffers from cancer, is acting as the sole parent to his children, constitute "extraordinary and compelling reasons" pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i).   Mot. 1,8.   Accordingly, the Court considers the following: (1) whether "extraordinary and compelling reasons" exist to reduce Defendant's sentence based on the enumerated criteria in the policy statement and an independent assessment; and (2) whether the § 3553(a) factors support a sentence reduction and whether Defendant is a danger to the community under § 3142(g).   *United States v. Pabon*, No. 17-CR-165-01, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### A.   Exhaustion of Administrative Remedies

Before a defendant can proceed to the merits of a motion for compassionate release, the defendant must satisfy Section 3582(c)(1)(A)'s exhaustion requirement.[9]   *United States v. Raia*,

---

[9] Section 3582(c)(1)(A) prohibits a defendant from moving for compassionate release, and the court from acting on that motion, until after the defendant has satisfied the statute's exhaustion requirement.   Prior to the First Step Act, a

954 F.3d 594, 597 (3d Cir. 2020).  To accomplish this, the First Step Act furnishes prisoners with "two direct routes to court: [either] (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion [for compassionate release], or (2) file a motion 'after the lapse of 30 days from the receipt . . . of such a request' by the warden of the prisoner's facility, 'whichever is earlier.'"  *United States v. Wilson*, No. 14-CR-209-1, 2020 WL 1975082, at * 2 (E.D. Pa. Apr. 24, 2020) (quoting *United States v. Rodriguez*, No. 03-CR-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Raia*, 954 F.3d at 595.  Under the exhaustion requirement, the BOP is given "a chance to review a defendant's request in the first instance[, which] can result in the request being 'resolved much more quickly and economically . . . than in litigation in federal court.'"  *Woodford v. Ngo.*, 548 U.S. 81, 89 (2006).  Moreover, it permits the BOP "to gather the defendant's administrative and medical records, helping to produce a useful . . . record for subsequent judicial consideration."  *Id.* (citation omitted).

Although courts are split on whether the failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, the Third Circuit has determined that an inmate may file a motion for compassionate release in a United States District Court thirty (30) days after presenting the request to the warden, regardless of whether the administrative appeal process is complete.  *See United States v. Harris*, 973 F.3d 170 (3d Cir. 2020).  In the present case, Defendant submitted his request to the Warden on September 29, 2020, and it was denied on December 21, 2020.  Response 3.  His Motion is thus ripe for consideration.

**B.     Extraordinary and Compelling Reasons**

Given that Defendant has met the administrative exhaustion requirements of 18 U.S.C. §

---

motion for compassionate release could be brought by only the director of the BOP, not the defendant.  *See* 18 U.S.C. § 3582(c)(1)(A) (2017).

3582(c)(1)(A), his "next hurdle is to establish that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. Cantatore*, No. 16-CR-0189, 2020 WL 2611536, at *3 (N.D.J. May 21, 2020).

"Section 3582(c)(A)(1) does not define what constitutes 'extraordinary and compelling reasons.' Instead, Congress delegated authority to the Sentencing Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v. Hammond*, No. 18-CR-184, 2020 WL 2126782, at *4 (E.D. Pa. May 5, 2020).[10]

Here, Defendant alleges a combination of his age (48), concerns over possible exposure to COVID-19, his anxiety and heart disease, a disproportionately long sentence, and familial circumstances constitutes an extraordinary and compelling reason to reduce his sentence.

---

[10] The Commission provided its definition of the term "extraordinary and compelling reasons" in U.S.S.G. § 1B1.13, Application Note 1, which provides, in its entirety:

1. Extraordinary and Compelling Reasons – Provided the defendant meets the requirements of subdivision (2) [*i.e., danger to the community*], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant. –

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is –

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious health deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reasons other than, or in combination with, the reasons described in the subdivisions (A) through (C).

Considering the totality of these claims, the Court disagrees.

1.      **Defendant's Concerns about the COVID-19 Pandemic**

To be clear, the severity of the COVID-19 pandemic cannot be discounted, and the Court empathizes with Defendant's health concerns.  However, the Third Circuit has made apparent, "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *Raia*, 954 F.3d at 597.  "Thus, the Court must conduct a highly individualized inquiry of this Defendant to determine whether COVID-19 in conjunction with [his] alleged underlying medical conditions constitute extraordinary and compelling reasons for a reduction of [his] sentence to time served."  *Cantatore,* 2020 WL 2611536, at *3.

While the Court recognizes Defendant's age of 48 places him at a slightly higher risk for contracting severe illness from COVID-19, Defendant was already nearly 38 when he was first sentenced.  The Center for Disease Control and Prevention (hereinafter "CDC") recognizes that, "the risk of severe illness from COVID-19 increases with age, with older adults at highest risk."[11]  However, just because Defendant was already somewhat advanced in age at the time of his arrest does not discount this Court's need to ensure justice for his wrongdoings.  *See United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 at *5 (S.D.N.Y. Apr. 13, 2020) ("If [the defendant's] age alone [was] a sufficient factor to grant compassionate release in these instances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release[.]").  Defendant's alleged fear of contracting COVID-19 is also undercut

_____

[11] CDC, *COVID-19 Risks and Vaccine Information for Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults html (last updated Aug. 2, 2021).

by his desire to re-enter the workforce as a chef.  Mot. 8.

Additionally, even amongst older adults, those who are vaccinated "showed a 94% reduced risk of COVID-19 related hospitalization."[12]  Courts have echoed this strength in the efficacy of the vaccines and continually held that where a defendant was vaccinated, even if he otherwise presented a comorbidity, compassionate release should be denied.  *See Garrett v. Murphy*, 17 F.4th 419, 433 (Oct. 29, 2021) (holding that prior infection with COVID-19 and having received the available vaccinations eliminates any imminent health threat caused by COVID-19); *United States v. Reed,* No. 18-CR-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release petitions generally lack merit); *United States v. Sturgell*, No. 15-CR-120, 2021 WL 1731787, at *7 (E.D. Pa. May 3, 2021) (denying compassionate release where the defendant recovered from COVID-19 and has received the first dose, and is scheduled to receive the second dose, of the Pfizer vaccine); *United States v. Irizzary*, No. 14-CR-652-13, 2021 WL 735779, at *7 (E.D. Pa. Feb. 25, 2021) (declining compassionate release where the prisoner already contracted and recovered from COVID-19 with little complication and was fully vaccinated with the Moderna vaccine); *United States v. Moore*, No. 18-CR-474, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) ("[The inmate's] previous experience with COVID-19 does not present an extraordinary and compelling reason for his release either.  Numerous courts have denied compassionate release at least partially because a movant already contracted the virus."); *United States v. Jimerson*, No. 15-CR-209, 2021 WL 280085, at *3 (E.D. Pa. Jan. 25, 2021) (finding no extraordinary or compelling reason for release where the prisoner had already recovered from COVID-19); *United States v. Moore*, No. 14-CR-315-06, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) ("Where [the

---

[12] *Id.*

inmate] has not faced any medical complications related to his COVID-19 infection or experienced an exacerbation of his underlying health issues, his medical condition does not qualify as 'an extraordinary and compelling reason' that would support his compassionate release."); *United States v. Wiltshire*, No. 11-CR-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]he risk of reinfection after a prior positive test for COVID-19 is not a basis for compassionate release here.  Presently, there is no scientific consensus on the risk of reinfection...Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic.").  In this case, Defendant has already contracted and recovered from COVID-19 with no complications and is fully vaccinated.  Because his health concerns relate entirely to COVID-19, he has failed to present an extraordinary and compelling reason for release.

### 2.    Defendant's Wife's Cancer

Finding his own health concerns insufficient, the Court next turns to Defendant's alleged extraordinary and compelling family circumstances.  Specifically, Defendant implies that he needs to assist his wife who has cancer in taking care of his children.  Mot. 8.  However, without further information, the Court cannot grant compassionate release based on such allegation.

 "A family member's illness, absent incapacitation or death, is not enough to constitute an extraordinary and compelling family circumstance.  District Courts routinely deny motions for compassionate release where the defendant cannot show that they would be the only available caregiver even if their incarceration imposes substantial burdens on their spouse or co-parent to a minor child." *United States v. Cruz-Rivera*, No. 11-CR-43, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020).  *See United States v. Nassida*, No. 14-CR-241, 2020 WL 4700845, at *3 (W.D. Pa. Aug. 13, 2020) (denying compassionate release where Defendant's wife was getting pre-breast cancer treatment and a knee replacement, and the defendant's daughter, who would care for her

during these times, also suffered from severe health conditions); *United States v. Thornton*, No. 18-CR-167-1, 2020 WL 4368155, at *5 n.10 (W.D. Pa. July 29, 2020) (denying compassionate release where the defendant's child suffered from cancer and the mother, who recently lost her job, could not properly care for their children because there was no incapacitation or death of the caregiver).

Here, Defendant fails to provide any evidence of incapacitation on the part of his children's caretaker. Without more, Defendant's wife's cancer, though severely unfortunate, cannot contribute to finding an extraordinary and compelling reason for release.

### 3.      Disparity in Defendant's Sentence

Finally, the Court will now address Defendant's alleged disparity in sentencing. Without any explanation, Defendant argues that there is a disparity between the sentence he received and the sentence he would receive under guidelines today. Mot. 1. The Government responds that such an argument is more appropriately handled in a § 2255 habeas petition, and Defendant has a pending motion that is presently stayed pending the United States Supreme Court's decision in *United States v. Taylor*. The Government is correct that Defendant raises similar arguments in his present motion as is made in his stayed § 2255 petition. Thus, for purposes of the present Motion, the Court will not further consider the merits of such argument.

### C.      § 3553(a) Factors and Dangerousness to the Community

Even if this Court found the Defendant's age and health conditions, together with the presence of COVID-19, his wife's health, and the length of his sentence rose to a level of extraordinary and compelling reasons, a conclusion this Court does not reach, those considerations would be outweighed by the §3553(a) factors and that Defendant presents a danger to the community.

Prior to modifying a term of imprisonment under Section § 3582(C)(1), a court must also consider Section § 3553(a)'s factors "and establish that the defendant is not a danger to the safety of any person in the community as provided in 18 U.S.C. § 3142(g)." *Cantatore*, 2020 WL 2611536, at *5.  The factors include:

> (1) the nature of the circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and,
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
> (3) the kinds of sentences available;
>
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty in similar conduct[.]

18 U.S.C. § 3553(a).

The Government suggests a sentence reduction is not appropriate because "the defendant fails to demonstrate how release, [128 months as of this writing] into a 180-month sentence for a gunpoint robbery, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." Response 33.  Considering the totality of these factors, the Court finds the same.

Defendant's conduct warranted a lengthy prison sentence, and the sentence Defendant received appropriately reflects the severity of his actions.  In fact, despite Defendant's lengthy, violent criminal history, his present sentence fell well below the Probation Officer's recommended guideline range at the time of sentencing.  Courts have generally denied release in circumstances comparable to those presented here, even when COVID-19 vaccinations were not widely available. *See United States v. Holmes*, 839 F. App'x 681, 682 (3d Cir. 2021) (affirming the district court's denial of compassionate release where the defendant had "a lengthy and serious criminal history,

including felony drug offenses, aggravated assault, and pointing a loaded gun at a police officer[,]" and he had only served nearly a half of his 300-month sentence); *United States v. Watson*, No. 07-CR-238, 2021 WL 242478, at *6-7 (E.D. Pa. Jan. 25, 2021) (denying compassionate relief for an obese defendant who only served 180 months of a 240-month sentence for four (4) smash-and-grab robberies because of the severity of his criminal conduct and extensive criminal history); *United States v. Parnell*, No. 12-CR-418-6, 2021 WL 148519, at *5 (E.D. Pa. Jan. 15, 2021) (finding the obese defendant a danger to the community when he served just over half of his 181-month sentence for plotting to participate in an armed stash house robbery); *United States v. Phillips*, No. 09-CR-718, 2020 WL 5076753, at *5 (E.D. Pa. Aug. 27, 2020) (denying compassionate release for an obese defendant with other ailments when he served only 73% of his sentence, had previously committed multiple violent, drug offenses, and was presently serving for an assault on a wheelchair-bound victim).  Considering this precedent with Defendant's violent criminal history and the violent crime for which he is currently serving, granting him a sentence reduction at this stage would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from future crimes, or prevent sentence disparities.

Finally, this Court must consider the danger Defendant could present to the community. To do this, courts turn to the factors set forth in §3142(g), which include the nature and circumstances of the crime charged; the defendant's personal history; and the defendant's criminal history.  18 U.S.C. §3142 (g).  Defendant claims he is not a danger to the community because he has not committed many disciplinary infractions while incarcerated and has undergone significant rehabilitative efforts, including: taking numerous classes, drafting six (6) novels, and maintaining a job for the past ten (10) years as a prison cook.  Mot. 7-10.  While the Court recognizes and

applauds Defendant's rehabilitative progress, the Court cannot ignore that he has been incarcerated multiple times before and, upon release, has quickly recidivated with an equally violent crime. *See United States v. Baye*, No. 12-CR-115, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (holding that the defendant is a danger to the community, regardless of having no disciplinary infractions during his incarceration, because "despite numerous crimes and sentences, [he] quickly recidivated, committing further dangerous crimes."). Considering all these factors, the Court cannot confidently say that releasing Defendant at this stage or reducing his sentence would not bring greater danger to the community.

## VI.    CONCLUSION

The Court concludes that Defendant has not demonstrated extraordinary and compelling reasons justifying his release or a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and § 1B1.13 of the Sentencing Guidelines at this time. For the foregoing reasons, Defendant's Motion for Compassionate Release is denied with leave to re-file. An Order consistent with this Memorandum follows separately.

BY THE COURT:


*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.